UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEAN COMBS,

     Applicant,

v.                               CASE NO. 8:16-cv-502-T-23JSS

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

Combs applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for both sexual battery and burglary with an assault or battery, for which convictions Combs is imprisoned for consecutive, ten-year sentences. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 17) The respondent admits the application's timeliness (Doc. 17 at 2) and correctly argues that some grounds are unexhausted and procedurally barred from federal review.

## I.  BACKGROUND[1]

Combs and the victim shared a turbulent — sometimes violent — intermittent relationship for nearly a year before they had intimate relations on June 10, 2008.

_____

[1] This summary of the facts derives from Combs's brief on direct appeal (Respondent's Exhibit 8) and the state courts' findings of fact in the post-conviction courts' orders. (Respondent's Exhibits 12, 17, 18, and 25)

The post-conviction court described the events before the incident as follows

(Respondent's Exhibit 18 at 14):

> In the present case, the evidence of the Defendant's actions in June 2008 (frightening and chasing the victim, being chased off by the neighbor, lurking around or attempting to break into her apartment), the victim's reports to law enforcement, the issuance of a trespass warning by law enforcement, and the Defendant's threatening and harassing text messages to the victim in the days leading up to the crime were relevant to prove the material facts of the Defendant's intent to commit the crimes and the absence of the victim's consent for him to enter her property.

The victim alleged that the incident was a burglary and a rape; Combs's defense was

that the incident was consensual.

Combs was charged with burglary with an assault or battery and sexual battery

with use of force likely to cause serious injury. A jury found Combs guilty of both

the charged burglary and the lesser included sexual battery without use of force. The

state circuit court sentenced Combs to imprisonment for consecutive terms of ten

years for both counts followed by probation for five years. The state district court

summarily affirmed the convictions and sentences. *Combs v. State*, 61 So. 3d 1122

(Fla. 2DCA 2011). Combs unsuccessfully challenged his convictions and sentences

in two motions under Rule 3.850, Florida Rules of Criminal Procedure, for

post-conviction relief and the subsequent appeal from each motion. Combs was

afforded an extensive evidentiary hearing on the motion for post-conviction relief,

which the state court denied with a detailed order.[2]  The respondent argues that some

grounds for relief in the present application are procedurally barred from federal

review because Combs never presented the claim to the state courts, because Combs

failed to assert the ground on appeal from the denial of the first Rule 3.850 motion,

or because the ground was asserted in the untimely second Rule 3.850 motion.

## II.  EXHAUSTION AND PROCEDURAL DEFAULT

The respondent argues that Grounds 3, 11–13, 15, and 17 are procedurally

barred from federal review, primarily because Combs failed to fully exhaust his

available state court remedies.  An applicant must present each claim to a state court

before raising the claim in federal court.  "[E]xhaustion of state remedies requires

that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the

State the 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S.

270, 275 (1971).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously

enforced total exhaustion rule will encourage state prisoners to seek full relief first

from the state courts, thus giving those courts the first opportunity to review all

claims of constitutional error.").

---

[2]  The post-conviction court's initial order is lodged as Respondent's Exhibit 17.  The post-conviction court issued an amended order two days later, which is lodged as Respondent's Exhibit 18.  The latter order states that the amendment corrects "footnote 43 and related attachment, and one edit on p.32 of previous Final Order." (Respondent's Exhibit 18 at 1) However, the lodged copy of the amended order contains many unexplained redactions — the redactions are not in the initial order and the reason for the redactions is not self-evident.  The copy of the amended order submitted by Combs (Exhibit A, Doc. 2) does not contain the redactions. When quoting the post-conviction court's order, the response sometimes inserts "[redacted]" but other times includes the redacted material. The present order includes the material redacted in the amended final order (Respondent's Exhibit 18) but disclosed in the initial final order. (Respondent's Exhibit 17) Additionally, the present order's quotations to the final orders omits the footnotes.

## Ground 3

Combs alleges both that the prosecution violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and that trial counsel rendered ineffective assistance by neither conducting a sufficient investigation nor understanding the right to confront his accuser as explained in *Davis v. Alaska*, 415 U.S. 308 (1974). Combs did not assert his *Brady/Giglio* claim until his second Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 24 at 21–27) The post-conviction court ruled that the asserted claim did not qualify as "newly discovered evidence" and rejected the claim as "both untimely and successive." (Respondent's Exhibit 25 at 4) Combs's untimely presentation of the substantive *Brady/Giglio* claim to the state courts fails to meet the exhaustion requirement. "[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered [absent a special circumstance, r]aising the claim in such a fashion does not, for the relevant purpose, constitute 'fair presentation.'" *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

The respondent correctly argues that Combs never presented to the state court the claim of ineffective assistance of counsel based on an alleged violation under *Brady/Giglio* and *Davis*. (Doc. 17 at 10–12) In reply (Doc. 28 at 6–7), Combs argues that the claim was addressed during the evidentiary hearing on the first Rule 3.850 motion as a part of the claim of ineffective assistance of counsel alleged in Ground 2. Accepting his contention that he previously presented the underlying facts as part of

Ground 2, Combs did not, however, assert a claim based on a violation under *Brady/Giglio* and *Davis*. Consequently, Combs exhausted neither the substantive claim nor the ineffective assistance of counsel claim in Ground 3. *See Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

## Grounds 11–13

Combs alleges that trial counsel rendered ineffective assistance (1) by not moving for a mistrial based on a juror sleeping during the trial (Ground 11), (2) by neither rehabilitating nor striking a biased juror (Ground 12), and (3) by not noticing the expiration of the statutory time for a speedy trial (Ground 13). Combs asserted each claim in his first Rule 3.850 motion. (Respondent's Exhibit 11) The post-conviction court (1) summarily denied Ground 11 because the allegedly sleeping juror was an alternate and was dismissed without participating in the jury's deliberations (Respondent's Exhibit 12 at 6); (2) summarily denied Ground 12 as refuted by the record because the venireman never expressed bias toward the judge (the venireman had treated the judge as a physical therapist) and because that judge conducted only the jury selection and not the trial (Respondent's Exhibit 12 at 8–9); and (3) denied Ground 13 as refuted by the record because the trial started on the last day of the statutory fifteen-day "recapture period" (Respondent's Exhibit 15 at 1–2).

Combs appealed the denial of post-conviction relief but he failed to "fairly present" these three claims to the state court by not briefing each claim in his opening brief. In the table of contents for his opening brief Combs listed as a claim that the trial court erred "by summarily denying grounds 1, 7, and 11 . . . without an evidentiary hearing," (Respondent's Exhibit 19 at i), which are the three claims asserted in Grounds 11–13 of the federal application. Other than being listed in the table of contents, Combs presented to the state court no further discussion or argument in support of these claims. Under state law simply listing a claim fails to present the claim for appellate review, as *Heath v. State*, 3 So. 3d 1017, 1029 n. 8 (Fla. 2009), explains: "Heath has waived his cumulative-error claim because his brief includes no argument whatsoever and instead consists of a one-sentence heading in his brief." *Accord Smith v. State*, 151 So. 3d 1177, 1182, n.3 (Fla. 2DCA 2014) ("[W]e hold that Smith's assertion of ineffective assistance under this claim — and any other claim where ineffectiveness is solely referenced in the heading — is waived.") (citing *Heath*.). Combs failed to properly exhaust his state court remedies for Grounds 11–13.

Moreover, even if he had "fairly presented" his claim to the state courts, the claim fails to assert the violation of a federally protected right. Combs argues that the state post-conviction court violated state law when it denied his Rule 3.850 motion without granting him an evidentiary hearing and without attaching portions of the record that conclusively refute his entitlement to relief. (Doc. 19 at i) A defect in a

state collateral proceeding provides no basis for habeas relief.  *See Carroll v. Sec'y, Dep't of Cor.*, 574 F.3d 1354, 1365 (11th Cir. 2009) (holding that a habeas applicant's claim — the state court violated his due process rights when it summarily denied his post-conviction claim without an evidentiary hearing — did not state a claim on which a federal court may grant habeas relief); *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) ("We have held the state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief."); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.).  A challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — that is, the conviction itself — and thus habeas relief is not an appropriate remedy.  *See Carroll*, 574 F.3d at 1365; *Quince*, 360 F.3d at 1261–62.  Furthermore, a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no question of a constitutional nature is involved.  *See Carroll*, 574 F.3d at 1365.

## Ground 15

Combs alleges that his "Fifth, Sixth, and Fourteenth Amendment Rights as secured by the United States Constitution" were violated because the trial court denied the defense a continuance.  Combs presented a similar claim as his first issue on direct appeal but he presented that issue as an abuse of discretion under state law

and not as the violation of a federally protected right. The failure to alert the state appellate court that the trial court allegedly violated a federally protected right fails to meet the exhaustion requirement. As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). An applicant must present to the state court the same claim presented to the federal court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

**Ground 17**

Combs alleges that "the cumulative effect of trial court and defense counsel's combined errors . . . prejudice[d the] defense" in violation of his "Sixth Amendment rights." (Doc. 1 at 74) The respondent correctly argues (Doc. 17 at 44) that Combs failed to present to the state courts a singular claim based on the cumulative effect of the combined errors of both the trial court and defense counsel. Although he is correct that he presented separate cumulative effect claims on direct appeal and in the post-conviction proceedings, Combs did not present to the state courts a cumulative effect claim based on the combined errors of both the trial court and defense counsel. Consequently, the combined effect claim asserted in Ground 17 is unexhausted.

\* \* \* \*

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."). *See also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

As determined above, Grounds 3, 11–13, 15, and 17 are procedurally defaulted and, as a consequence, each is barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *Coleman v. Thompson*, 501 U.S. 72, 29–30 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "Cause" must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the petitioner must show "not merely that the errors at his trial created the <u>possibility</u> of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (emphasis original) *(quoting United States v. Frady*, 456 U.S. 152, 170 (1982)).

To meet the fundamental miscarriage of justice exception, Combs must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Combs fails to establish either cause and prejudice or a fundamental miscarriage of justice. Therefore, Grounds 3, 11–13, 15, and 17 are procedurally barred from federal review and not entitled to a determination on the merits. Grounds 1, 2, 4–10, 14, and 16 are entitled to a review on the merits.

# III.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")
governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th
Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly
deferential standard for federal review of a state court adjudication, states in pertinent
part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court
interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue only
> if one of the following two conditions is satisfied — the state-
> court adjudication resulted in a decision that (1) "was contrary to
> . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States." Under
> the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court

> decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if
> the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 134 S. Ct. at 1702). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States

Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the

unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Combs's convictions and sentence. (Respondent's Exhibit 10) Similarly, in other *per curiam* decisions without a written opinion the state appellate court affirmed the denial of Combs's subsequent Rule 3.850 motions to vacate. (Respondent's Exhibits 22 and 27) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Combs bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Combs's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 12, 17, 18 and 25) The remaining grounds in Combs's federal application present the same claims of ineffective assistance of counsel that were presented to the state courts.

**Trial Court Error — Ground 14**

Combs alleges that the trial court violated his rights under the Confrontation Clause, as applied by *Crawford v. Washington*, 541 U.S. 36 (2004), by not suppressing

"10 days worth of text messages between [the] victim and Petitioner" based on the lack of a proper predicate through a records custodian from the telephone company. (Doc. 1 at 71)  Instead, the trial court allowed the prosecution to introduce the text messages into evidence through the victim.  Combs alleges that he was prejudiced because the prosecutor "dedicated his entire rebuttal closing argument to reading these texts to the jury" without requiring the prosecutor to lay a proper foundation. (Doc. 1 at 71)

The respondent correctly argues that *Crawford* is inapplicable because the text messages were not "testimonial hearsay statements."  (Doc. 17 at 38–40)  *Crawford*, 541 U.S. at 68, identifies "testimonial" evidence as "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations."  The text messages (exchanges between the victim and Combs) fail to qualify as "testimonial."

Moreover, the declarant of some of the texts — the victim — was subjected to cross-examination by Combs at trial; Combs was the declarant for the remainder of the texts.  As a consequence, no confrontation violation occurred by admitting the text messages into evidence. The state court's permitting the prosecution to introduce the text message through the victim — without a custodian of records from the telephone company — was neither contrary to nor an unreasonable application of controlling law as established by the Supreme Court.

# IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Combs claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice.  *See Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Combs must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Combs must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Combs cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers'

performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation is discussed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make *reasonable* investigations or make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Combs must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or

(2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

After conducting an evidentiary hearing, the post-conviction court recognized that Combs must prove both deficient performance and prejudice as established by *Strickland*, and after determining that Combs failed to meet both requirements, the state court denied the remaining claims of ineffective assistance of counsel. (Respondent's Exhibit 18 at 2–3) Because the post-conviction court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Combs cannot meet the "contrary to" test in Section 2254(d)(1). Combs instead must

show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## A.  Claim of IAC During Pre-Trial

### Ground 1

Combs alleges that trial counsel rendered ineffective assistance by "fail[ing] to move to suppress post-*Miranda* statement" (Doc. 1 at 9), specifically, Combs's statement uttered after having invoked his *Miranda* rights.  The morning after the incident a detective questioned Combs about the incident, and when the detective informed Combs about the charges, Combs invoked his right to an attorney.  Questioning ceased.  At his first appearance the following day Combs signed an "Invocation of Constitutional Rights" form.  (Combs's Exhibit 2 at 13, Doc. 25)  Later that day Combs was escorted to a small room where police officers were going to swab his mouth for a DNA sample.  Combs alleged that he was surrounded by six officers in a small room and was told "we hope that you resist so we can slam you and take" the DNA sample, after which Combs spontaneously admitted to having

sex with the victim. Combs claims that he uttered the statement in fear of physical harm.

The post-conviction court rejected Combs's claim as follows (Respondent's Exhibit 18 at 31–32):

> The statement testimony that the Defendant challenges is Det. Emilius's testimony that on June 11, 2008, when she met with the Defendant in order to take a buccal swab for DNA testing, he said "I'm not denying I had sex with her. She let me in. I would have given you this yesterday, if you asked me." At the time of the Defendant's statements, the Defendant had invoked his right to counsel. At the evidentiary hearing, trial counsel testified that he did not consider filing a motion to suppress this statement because it supported the defense theory of the case that consensual sex occurred and because the statement appeared to be a spontaneous statement made during the execution of a search warrant which was not unconstitutional.
>
> The Court finds that, upon review of the trial record, trial counsels' decision to not seek to have the statement excluded supported the overall defense at the trial, and as a result, it was a reasonable trial strategy. Trial counsel were not ineffective for failing to file a motion to suppress . . . the statement of the Defendant . . . .

The post-conviction court ruled both that trial counsel's choice of a defense based on consent was a reasonable trial strategy, not deficient performance, and that the statement supported the chosen defense. The state court's ruling is neither contrary to nor an unreasonable application of controlling law. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). *See Strickland*, 466 U.S. 690 ("[S]trategic choices . . . are virtually unchallengeable."). Counsel's reliance on a

particular defense is "a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) (citing *Strickland* for proposition that no set of detailed rules for counsel's conduct should be used to evaluate ineffectiveness claims). "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998). In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d at 1244, n.17. Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

## B. Claims of IAC During the Prosecution's Case

### Ground 2

Combs alleges that trial counsel rendered ineffective assistance by "fail[ing] to impeach the star witness," that is, the victim. (Doc. 1 at 13) Combs lists eleven examples of missed opportunities to impeach the victim on cross-examination. (Doc. 1 at 14–15) The post-conviction court rejected Combs's claim as follows (Respondent's Exhibit 18 at 9–11):

> The Defendant also alleges that his trial counsel was ineffective for failing to impeach the victim, whose testimony at trial was inconsistent with her previous sworn statements and statements to investigators. The Defendant further contends that after the Court addressed the problem of improper impeachment with

trial counsel during a bench conference, counsel made no further attempt to impeach the witness. The Defendant's motion claims the victim made various inconsistent statements between her initial police report, her deposition testimony and her trial testimony, including that the Defendant threatened to kill her horses, that he was homeless, that she did not call him in May 2008, that her facial injuries were the result of his beating her, that the Defendant destroyed her own window blinds in a rage, and that she may have left her front door unlocked.

Trial counsel did address many of these inconsistencies in the victim's testimony during cross examination: the length of time since the couple had been dating, her injuries due to a fall in the barn, the threats against her horses, the Defendant's homelessness, and the damage to the blinds. The record also shows that trial counsel challenged the victim's credibility due to her inconsistent statements on topics which are not mentioned as part of this ground. To the extent that the victim made inconsistent statements, trial counsel rendered reasonably competent performance in his efforts to present these inconsistencies to the jury for the purpose of undermining her credibility as a witness.

To the claims that trial counsel lacks the skill necessary to impeach the victim witness because there were objections by the State during the trial, counsel testified at the hearing that, although he "could have more clearly laid the proper foundation to impeach a witness," he did elicit the responses necessary to the defense strategy of undermining her credibility. He further testified that his decision not to call [certain identified witnesses] or any other impeachment witnesses was based solely on his trial strategy, not on admonishments by the Court for improper impeachment.

While the Defendant argues that these inconsistencies in the victim's statements . . . are critical because he believes the case comes down to a "credibility contest" between him and the victim, the evidence was not solely limited to these inconsistencies, and there was other evidence to support the jury verdict, notably: testimony from other witnesses, such as neighbors, law enforcement officers, and medical personnel who, while they were not eyewitnesses to the crime, testified to relevant and material facts. Upon review of all the testimony at the evidentiary hearing along with the trial record, the Court finds that trial counsel's testimony that the decision to not call

> these witnesses was a strategic decision is credible, and that it
> was a reasonably competent decision. Equally important,
> counsel did bring forth evidence of the victim's inconsistent
> statements at trial, and as a result, the Defendant was not
> prejudiced.

The post-conviction court ruled that trial counsel's manner of impeaching the victim was a reasonable trial strategy and not deficient performance. The state court's ruling that counsel's strategy was reasonable is neither contrary to nor an unreasonable application of controlling law. *Strickland*, 466 U.S. at 688 (ruling that a defendant must show that counsel's representation fell below an objective standard of reasonableness); *Flores-Ortega*, 528 U.S. at 481 ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

**Ground 4**

Combs combines the claims he alleged in grounds four and fourteen in the post-conviction proceedings. From his ground four in the state proceeding, Combs alleges that trial counsel rendered ineffective assistance by "misrepresenting DNA test results to petitioner and [the] jury, [and] falsely informing [the] jury that DNA proved elements of the crime charged." (Doc. 1 at 24) Although not identified in the statement of the claim, within the body of this ground Combs complains that his testifying required the disclosure of his prior felony convictions, which "was quite damaging to petitioner's credibility in the minds of the jury." (Doc. 1 at 27) The

post-conviction court rejected these claims as follows (Respondent's Exhibit 18 at

16–20):

> The Defendant alleges that prior to trial, counsel told him that the FDLE lab results showed that his semen was found to be present in vaginal, anal, and facial swabs from the victim taken as part of the investigation, information which the Defendant claims was inaccurate. The Defendant also claims that his attorney informed him that he must testify at trial to the fact that the sex between the parties on June 10, 2008, was consensual. He also argues that the decision to testify subjected him to a damaging cross examination, which elicited further admissions. The Defendant further alleges that counsel stipulated to the facts of DNA evidence in front of the jury in his closing argument and that he made negative statements about the elicited damaging testimony during the direct examination of the Defendant.

> . . . .

> First, although the Defendant claims that DNA evidence was misrepresented, there was DNA evidence in this trial that connected him to the crime. During the trial, the potential DNA evidence was first mentioned during the State's opening, when the State presented that it would prove that there was a positive DNA match between the Defendant and a swab of ejaculate from the victim's face. The State then introduced evidence that the FDLE received five samples of evidence from the victim to be tested for DNA . . . as well as two buccal swabs represented as being from the Defendant. The FDLE tested the swabs from the cheeks of the victim and the two buccal swabs from the Defendant and found that the Defendant's DNA matched the profile of the foreign contributor to the cheek swab sample.

> Second, the FDLE reports admitted into evidence at the hearing support a DNA connection to the Defendant. The first FDLE report . . . states that "semen was identified on the underwear, the vaginal swabs, the anal swabs, and the cheek swabs." There was trial testimony from [the emergency room nurse] that the victim informed her that the Defendant had ejaculated on her face. The second FDLE report . . . describes the results of the DNA testing, and it found that there was DNA match for the Defendant on the cheek swab. The report also states that the DNA profile from the vaginal swab was a mixture, and the

foreign contributor to the DNA was not conclusively determined. No DNA analysis was performed on the other samples. While there was no evidence of semen on the cheek swab brought forth during the trial, trial counsel's statement about a DNA connection to semen found on the victim's cheek was not contrary to the evidence overall in this case.

Third, at the trial, the Defendant affirmed that he was aware of the risks of testifying, including that he would be subject to examination and cross-examination and that if he had prior felony convictions or prior convictions for crimes involving dishonesty that that information could be presented to the jury. He also testified that he understood that it was his own decision to testify.

At the evidentiary hearing, trial counsel testified that he recalled the Defendant receiving a copy of the FDLE report prior to trial because the Defendant noted the inconsistencies in how his name is written on the report. In addition, trial counsel also testified that the Defendant was "emphatic" from the beginning that he wanted to testify on his own behalf, and that he customarily explains the advantages and disadvantages of testifying to all his clients, although he did not specifically recall having this conversation with the Defendant. Trial counsel stated that he agreed with the Defendant's decision to testify, and he thought that the benefits outweighed the risks. Stephen Watson, from the Office of the Public Defender, testified at the hearing that he spoke with the Defendant just prior to his trial and they discussed that if the defense of consent were to be raised at this trial, the Defendant would have to testify, and that the Defendant did not say that he did not want to testify.

Finally, the Defendant admitted to law enforcement that he had sex with the victim on the night in question, and his testimony at trial was that he had vaginal, anal, and oral intercourse with the victim. Trial counsel testified that the Defendant's version of events in preparation for the trial was that the sex was consensual. The State provided pretrial letters from the Defendant to his trial counsel that showed that the Defendant believed that he was wrongly accused of burglary and rape after a night of consensual sex with the victim. The Court finds trial counsel's testimony that the defense theory in this case relied upon the Defendant's version of events to be credible. There was no testimony adduced at the hearing, or assertion in the Defendant's motion, that the facts of this case are such that one DNA sample having been found to contain a mixture of donors

was to be likely exculpatory evidence, or that any other defense (e.g., misidentification) which could have been supported by such a finding was ever contemplated. The Defendant's evidentiary hearing testimony that he would not have testified at trial had he known that only the cheek swab from the victim DNA evidence only demonstrated a connection to him . . . is self-serving and not credible, based upon his pretrial admissions to intercourse with the victim and his detailed testimony during the trial to a number of sexual contacts with the victim on the night of the crime.

Therefore, the Court finds that the Defendant's trial counsel did not render ineffective assistance of counsel by misrepresenting DNA evidence at trial or that the representation caused the Defendant to testify. The Court finds that the defense counsel made a reasonably competent decision to pursue a defense, based upon the Defendant's own admissions, that the Defendant was falsely accused of sexual battery after a consensual sexual encounter. The Defendant was apprised of the risks of testifying, and he made a knowing and voluntary decision to do so. The Defendant was not prejudiced at trial on account of counsel's representations because he admitted to sex with the victim and there was DNA evidence to substantiate that the sex occurred . . . .

From his ground fourteen in the state proceeding, Combs alleges that trial counsel rendered ineffective assistance by "stipulating to foreign DNA." The post-conviction court rejected this claim as follows (Respondent's Exhibit 18 at 32–34):

The Defendant alleges that his trial counsel was ineffective for stipulating at a pretrial hearing on December 5, 2008, that the DNA evidence collected in the case was a match to the Defendant. He argues that trial counsel misled him about the DNA evidence and that he made factual concessions to the jury during closing, and that this misinformation unreasonably established his responsibility for the crime.

. . . .

Because any misrepresentation regarding DNA or other forensic evidence was consistent with the defense theory that

- 28 -

the Defendant was invited into the victim's residence where only consensual sex occurred, and the Defendant's own testimony admitted to these same acts, the Defendant was not prejudiced by defense counsel's statements during closing that DNA connected the Defendant to the victim in these ways.

First, the transcript of the December pre-trial hearing shows that defense counsel and the prosecutor were discussing the possibility of a stipulation — "There's been talk that we'll stipulate to DNA" (Respondent's Exhibit 32 at 235) — but not that the attorney's reached a stipulation.

Combs admitted to having sex with the victim in several ways on the night of the incident; the only question was whether the sex was consensual. As a consequence and because neither the quantity of DNA nor the locations from where the DNA was recovered nor the possible presence of DNA from someone other than Combs was material to whether the victim had consented, the post-conviction court correctly rejected Combs's claim that trial counsel rendered ineffective assistance. Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

## Ground 6

Combs alleges that trial counsel rendered ineffective assistance by taking "an adversarial position against his client." (Doc. 1 at 35) Combs alleges that "[t]hroughout the course of the trial, [defense counsel] made a number of outrageously negative and damaging comments about Mr. Combs and his alleged actions that can only be construed as attempts to assassinate Petitioner's character

and take [an] adversarial position against Mr. Combs." (Doc. 1 at 36) The post-conviction court rejected this claim as follows (Respondent's Exhibit 18 at 28–29):

> The Defendant argues that his counsel was ineffective because counsel took a position that was adversarial to the Defendant's and which contributed to the conviction in this case. The Defendant cites numerous actions of his attorneys as support: (1) mentioning that anal sex was an aspect of the case to prospective jurors during *voir dire*, (2) expressing a prejudicial personal opinion of the Defendant during opening and closing arguments, (3) failure to object to the introduction of evidence that a rape kit was taken, (4) failure to object to the testimony from a witness that there were conclusive results from the anal swab, or to clarify the outcome of forensic testing to the jury, (5) conceding during [trial] that the DNA evidence matched, (6) improper cross examination of witness Michelle Mullins, and (7) improper direct examination of the Defendant.

> Where a trial attorney cross examines witnesses, presents a case and does not concede the defendant's guilt, meaningful adversarial testing of the case has been found. The trial record shows that trial counsel did work on the Defendant's behalf to ensure that the State's evidence was tested, including cross examination of witnesses, presentation of evidence, moving for a judgment of acquittal, making numerous objections, and making a lengthy and detailed closing argument. As a result, the Court finds that meaningful adversarial testing of the case occurred, and that trial counsel did not render ineffective assistance.

The post-conviction court ruled that counsel's performance was not deficient because, contrary to Combs's assertion that defense counsel advocated against his client, defense counsel provided "meaningful adversarial testing" of the state's case. Counsel's decision to cross-examine and his manner of cross-examining are strategic decisions entitled to deference. *Dorsey v. Chapman*, 262 F.3d 1181, 1185–86 (11th Cir. 2001), *cert. denied*, 535 U.S. 1000 (2002). Defense counsel's decision to disclose

during *voir dire* that the incident involved anal sex was reasonable to assess each

possible juror's reaction.[3]  In his closing comments defense counsel characterized

anal sex as "really repulsive."  (Respondent's Exhibit 4 at 461)  Counsel testified at

the evidentiary hearing during the post-conviction proceeding that this trial strategy

was to "lessen the blow to the jury."  (Respondent's Exhibit 16 at 127)  Combs fails

to show that the post-conviction court's deferring to trial counsel's reasonable trial

strategy is an objectively unreasonable application of *Strickland*.  *See Minton v. Sec'y,*

*Dep't of Corr.*, 271 Fed. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has

'declined to articulate specific guidelines for appropriate attorney conduct and instead

has emphasized that the proper measure of attorney performance remains simply

reasonableness under prevailing professional norms.'") (*quoting Wiggins v. Smith*,

539 U.S. 510, 521 (2003)).

## **Ground 10**

Combs alleges that trial counsel rendered ineffective assistance by "fail[ing] to

object to the introduction of other uncharged bad acts. " (Doc. 1 at 58)  The

post-conviction court rejected this claim as follows (Respondent's Exhibit 18

at 12–16):

> The Defendant alleges that trial counsel was ineffective for
> failing to object to the following evidence on the basis that it
> was "Williams Rule" evidence:
>
> > a) an encounter between the Defendant and the
> > victim on June 7, 2008, which occurred while the

---

[3] As the post-conviction court stated (Respondent's Exhibit 18 at 33), "During the trial the Defendant testified that he and the victim engaged in vaginal and anal sex and that vaginal and oral sex followed."

victim was riding her bicycle, after which law
enforcement was called

b) the victim's report that later on June 7, 2008,
she saw the Defendant attempting to break into
her apartment, after which she fled the area and
called law enforcement

c) text messages sent between the Defendant and
the victim between June 1 and June 9, 2008

d) evidence of a police report on May 6, 2008

e) evidence of threats made by the Defendant to
the victim on May 8, 2008.

The Defendant argues that the State did not file notice of
similar fact evidence, pursuant to section 90.404, Florida
Statutes (2008), and this failure of notice was not objected to by
trial counsel. The Defendant also asserts that this improper
evidence was admitted without objection by defense counsel
when it came in under testimony from the victim, Morris
Holland, Deputy Gallof, and the Defendant himself, and that
had a timely objection been entered, the Court would have
performed the balancing test required under section 90.403,
Florida Statutes (2008), and found the evidence to be
inadmissible.

As an initial matter, the door was opened to the police report on
May 6, 2008, by the defense when Dep. Tristchler was called as
a witness for the purpose of showing that [the] victim
exaggerated, that she made inconsistent statements to law
enforcement, and that she would take advantage of an
opportunity to put the Defendant in a negative light. . . .

At the trial, the victim testified, over defense objection, to
threats the Defendant made to her life on May 8, 2008,
explaining that she did not follow through on prosecutions for
earlier incidences of violence by the Defendant because she
believed his threats [not] to be serious. She also testified, over
defense objection, that on June 7, 2008, three days prior to the
crime, she encountered the Defendant while riding her bicycle.
He frightened her, so she rode away quickly, and he pursued
her on his bicycle. She took refuge at the neighbor's house, the
neighbor chased the Defendant away, and the police were
summoned. That same day, the victim spotted the Defendant

"trying to break into my house or looking in the windows," and the police were again summoned. No arrest was made, but law enforcement issued the Defendant a trespass warning. The victim testified that she never withdrew the warning. She further testified, again over defense objections, that text messages were sent between the victim and the Defendant in which she told him not to contact her because he had threatened to kill her. Her neighbor, Morris Holland, corroborated her version of events, and Dep. Gallof from the Sarasota County Sheriffs Office testified that she responded to the victim's home on June 7, where she spoke to the Defendant by phone to advise him to stop harassing the victim with phone calls and texts. When she spoke to him, he told her that the victim "had been unfaithful to him and he wanted to cause her some emotional pain."

Under section 90.402, Florida Statutes, "[a]ll relevant evidence is admissible, except as provided by law." Evidence of inextricably intertwined facts "is admissible under section 90.402 because it is a relevant and inseparable part of the act which is in issue. It is necessary to admit the evidence to adequately describe the deed." . . . Because inextricably intertwined evidence is not admitted under the *Williams* Rule, the notice requirement of section 90.404, Florida Statutes (2008), does not apply.

In the present case, the evidence of the Defendant's actions in June 2008 (frightening and chasing the victim, being chased off by the neighbor, lurking around or attempting to break into her apartment), the victim's reports to law enforcement, the issuance of a trespass warning by law enforcement, and the Defendant's threatening and harassing text messages to the victim in the days leading up to the crime were relevant to prove the material facts of the Defendant's intent to commit the crimes and the absence of the victim's consent for him to enter her property. The acts were also inextricably intertwined with the crime because they establish the context out of which the criminal acts arose and described the pattern of violent and threatening events leading up to the crime. As a result, the evidence was admissible and defense counsel were not ineffective for failing to object to its introduction on the basis of the *Williams* rule. Moreover, defense counsel did enter numerous objections to the entry of this evidence on other grounds.

The Defendant argues that even if this evidence was relevant, it was prejudicial. . . . The evidence of the events leading up the crime was relevant, and it did not outweigh the probative value of explaining the context in which the crimes arose. It was neither unfair nor did its prejudicial nature outweigh its probative value because the content was not overly emotional or so sensational as to inflame the jury or to improperly appeal to their emotions. Because the evidence was admissible, trial counsel were not ineffective for failing to prevent its admission. To the extent that the evidence was objectionable on other grounds, trial counsel did timely enter objections.

The victim testified that prior to June 10, 2008, the Defendant had been violent to her about three or four times, and she had reported only some of those to law enforcement. She also testified that she did not follow through on the prosecutions for those acts of violence because either she was trying to forgive him or she was afraid because he had threatened to "hunt" and kill her if she got him in trouble. These previous acts of violence prior to June 10, 2008, including the May 8, 2008, threats, which were not reported to law enforcement are also relevant and inextricably intertwined with the events of June 10, 2008, because these details of the pattern of threats and violence put the crime and the events leading up to it in context, specifically the absence of the victim's consent either for him to enter her property or to engage in sexual intercourse. This testimony also served to explain, in part, the intermittent nature of their relationship, which [was] an issue during the trial because of the defense theory that the sex was consensual and that he was falsely accused by the victim.

Because the evidence of the events between June 1 and the crime, and the other previously unreported acts of violence between the Defendant and the victim, were admissible at trial, defense counsel were not ineffective for failing to have objected to them.

The post-conviction court determined that Combs proved neither deficient performance nor prejudice because the evidence not challenged by counsel was admissible under state law. Federal habeas corpus relief is generally not available for an error of state law. *Pulley v. Harris*, 465 U.S. 37 (1984); *Wainwright v. Goode*, 464

U.S. 78 (1983). "Nor do our habeas powers allow us to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted the" state's evidence rules. *Estelle v. McGuire*, 502 U.S. 62, 75 (1991). Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*. Because an objection would have been unsuccessful, Combs cannot show that he was prejudiced by the absence of an objection.

## Ground 16

Combs alleges that trial counsel rendered ineffective assistance by "fail[ing] to argue a legally correct judgment of acquittal." (Doc. 1 at 73) The post-conviction court rejected this claim as follows (Respondent's Exhibit 18 at 29–30):

> The Defendant argues that counsel made an insufficient motion for judgment of acquittal because the motion mistakenly relied upon the argument that no forced entry occurred and that forced entry is an element of the crime of burglary, because his trial counsel did not understand the law.
>
> A motion for judgment of acquittal tests the sufficiency of the State's evidence. "The trial court should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." "Generally, in order to prove burglary of a dwelling, there must be evidence to support a finding that the defendant entered or remained in a dwelling with the intent to commit an offense therein." Consent to enter is an affirmative defense to burglary.
>
> At the trial, defense counsel argued that a motion for judgment of acquittal should be granted because there was insufficient evidence of burglary because the State did not put on evidence of a forced entry into the residence. At the time trial counsel argued the motion, the only evidence to support the defense of consent to enter — the testimony of the Defendant — had not yet been presented. The Court ruled that the victim's testimony that she did not consent was sufficient evidence to support the

charge and denied the motion. After the close of the defense case, trial counsel's motion was renewed and denied without argument. The rulings were preserved for appeal and affirmed.

While a truly "boilerplate" motion for judgment of acquittal could support a post-conviction ground for relief, here, trial counsel set forth the evidentiary ground under which he believed the State's case failed. The trial record supports that even though there was conflicting testimony regarding whether the victim consented to the Defendant entering her home, the State put forth sufficient evidence for the case to go to the jury. The Court ruled on this sufficiency at the time the first motion for judgment of acquittal was made. Even if trial counsel were mistaken in regard to the law, the Court would still have found that sufficient evidence existed to allow the case to proceed to the jury. Therefore, the Court finds that the Defendant's trial counsel did not render ineffective assistance by making only a boilerplate motion for judgment of acquittal . . . .

The post-conviction court ruled both that counsel did not perform deficiently and that, even if counsel's performance was deficient, Combs proved no prejudice because the trial court would have rejected the arguments Combs contends trial counsel should have presented. Combs disagrees with the post-conviction court's assessment, arguing instead that he "may very well have prevailed on a more artfully presented motion for JOA." (Doc. 1 at 74) Combs's speculation that a "more artfully" argued motion might have prevailed fails to meet Combs's burden of showing that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

## C.  Claims of IAC During the Defense's Case

## Ground 7

Combs alleges that trial counsel rendered ineffective assistance by presenting a law enforcement officer as a defense witness "to testify about a prior report of

violence made by [the victim] against petitioner." (Doc. 1 at 42) The post-conviction

court rejected this claim as follows (Respondent's Exhibit 18 at 20–21):

> The Defendant alleges ineffective assistance of counsel for introducing prior bad act evidence, specifically the victim's May 6, 2008, report to law enforcement of an alleged May 4, 2008, attack by the Defendant. The Defendant claims that because the defense listed Deputy Tritschler as a witness, the door was opened to these events and other similar events being introduced into evidence. The Defendant claims that "nothing in Dep. Tritschler's testimony could be construed as useful to Defendant," and that the testimony regarding the May 6 report was otherwise objectionable as either inadmissible hearsay or irrelevant.
>
> At the trial, defense counsel called Dep. Tritschler and questioned her about the victim's May 6, 2008, report to law enforcement that the Defendant battered her and threatened to kill both her and the horses. At the evidentiary hearing, trial counsel testified that he called Dep. Tritschler for the purpose of having a law enforcement officer's testimony to support "the strategy of [the victim's] exaggeration and taking advantage of a situation to try to make Mr. Combs look bad" and to help show that this was a "tumultuous, volatile relationship." Trial counsel stated that, even though the victim admitted that she lied about threats against the horses, he wanted to show that the victim had previously lied to law enforcement. He testified that calling this witness and bringing the evidence of the May 6, 2008, report was a strategic decision that was entered into after "a lot of thought" and that he thought it was the right thing to do. He also testified that it was originally the Defendant's idea to list the deputy as a witness.
>
> Although this witness ultimately provided some testimony which did not support the Defendant's case, the Court finds defense counsel's strategy of undermining the credibility of the victim's testimony by providing evidence of her inconsistent statements and of showing that the victim and the Defendant were in the midst of a turbulent relationship in which the victim used reports to law enforcement to harm the Defendant to be a reasonable trial strategy, and trial counsel were not ineffective for having called her as a witness.

The post-conviction court determined that trial counsel's strategy of using the law enforcement officer's testimony to undermine the victim's credibility was a reasonable trial strategy. The state court's ruling that counsel's strategy was reasonable is neither contrary to nor an unreasonable application of controlling law. *Strickland*, 466 U.S. at 688 (ruling that a defendant must show that counsel's representation fell below an objective standard of reasonableness); *Flores-Ortega*, 528 U.S. at 481 ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). *See also Chandler v. United States*, 218 F.3d at 1318 (recognizing that counsel's reliance on a particular defense is "a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable."); *Provenzano v. Singletary*, 148 F.3d at 1332 ("In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice."). Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

## Ground 9

Combs alleges that trial counsel rendered ineffective assistance by "fail[ing] to utilize impeachment evidence of which he was unaware he had in his possession at the time of trial." (Doc. 1 at 52) The evidence was telephone records that showed frequent contact between Combs and the victim, contacts that were initiated by both

parties.  The post-conviction court rejected this claim as follows (Respondent's

Exhibit 18 at 21–23):

> The Defendant alleges that although evidence of numerous calls
> and text messages was introduced at trial for the purpose of
> showing conflict between the Defendant and the victim and his
> threats toward her, trial counsel introduced no rebuttal evidence
> to show that the relationship was improving on June 8th, and
> that on June 9th, just prior to the crimes, the Defendant sent a
> text message indicating that he only wanted to talk to the
> victim. He contends that this evidence would demonstrate his
> intent only to talk. In addition, the Defendant alleges that he
> told his attorney that he had a different phone number prior to
> June 1, 2008, and that he asked his attorney to retrieve the call
> records and text messages from the number in order to obtain
> rebuttal evidence of the nature of relationship between the
> victim and the Defendant
>
> First, at the evidentiary hearing, trial counsel testified that he
> did not want to submit phone records from a second phone at
> trial because he thought that they were not relevant to the case.
> He also reported that the evidence the messages were purported
> to show was the on-again-off-again nature of the relationship,
> and that evidence would have been cumulative to the victim's
> admission to that fact. Also, prior to trial, the Defendant told
> trial counsel not to pursue obtaining the previous phone's
> records and a letter was put into evidence to support this claim.
> Counsel testified that the Defendant's request was one of the
> reasons he no longer sought to obtain that phone.
>
> Second, at the trial, a report of text messages to and from the
> victim's phone were entered into evidence, and the report
> included texts from the 544-0652 number which the Defendant
> argues should have been entered into evidence by his trial
> counsel. The evidence included the June 9, 2008, 10:47 p.m.
> text message from the Defendant's 822-2006 number to the
> victim asking, "Will u talk 4 a sec?" The report appears to show
> all the messages to the victim's phone, even those from phone
> numbers other than 822-2006, and the above message from
> 822-2006 is the last one before the crime. The Defendant
> testified as to this message as well as his intent to visit
> victim to talk during his testimony. The message asking the
> victim to talk was even referenced in the State's closing
> argument. The trial record also shows that trial counsel asked
> the Defendant about the June 8 text message, but the Defendant

> failed to remember that he had sent that message. Even if trial
> counsel ha[d] obtained the second phone, the second phone text
> message evidence would have been cumulative to the June call
> records admitted by the State at trial.
>
> The Defendant's claims are also refuted by the record because
> the message from the Defendant asking to talk, as well as a
> complete set of messages to the victim's phone, were admitted
> and testified to at trial, and defense counsel questioned him
> about the June 8 and June 9 messages during direct
> examination. In addition, the Court finds that trial counsels'
> strategy of not admitting this rebuttal evidence because it was
> cumulative evidence to be a reasonable trial strategy.

The post-conviction court ruled that trial counsel's not using the additional telephone records — to the extent that additional records were not admitted into evidence — was a reasonable trial strategy and not deficient performance. The state court's ruling is neither contrary to nor an unreasonable application of controlling law. *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Also, the state court correctly deferred to trial counsel's relying on Combs's directive to not further pursue the records. *See Michael v. Crosby*, 430 F.3d 1310, 1321 (11th Cir. 2005) ("[E]vidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims."), *cert. denied*, 547 U.S. 1133 (2006). Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

## D.  Claims of IAC During Closings

### Ground 8

Combs alleges that trial counsel rendered ineffective assistance by not "object[ing] to [the] prosecutor's improper comments and misconduct" during closing arguments.  (Doc. 1 at 46)  Combs identifies statements during the prosecutor's closing that he contends counsel's failure to object was ineffective assistance. The post-conviction court rejected this claim as follows (Respondent's Exhibit 18 at 25–28):

> The Defendant asserts that the State attorney made numerous improper comments during his closing argument to which trial counsel made no objection. First, the Defendant argues that the State attorney argued several facts not in evidence:
>
> > a) that the State's witness Susan Tuttle testified that the "bedroom door was not damaged two days prior." The Defendant argues that the witness testified that she "did not notice the door."
> >
> > b) that the State's witness DNA expert Mullins testified that the Defendant's semen was on the victim's face. The Defendant argues that the witness never used the word "semen" in her testimony.
> >
> > c) that the Defendant admitted punching the victim in the face with a closed fist and that the Defendant took her purse. The Defendant argues that he never testified to these facts.
> >
> > d) that State's witness Dr. Federer testified that absence of gynecological injury is not unusual in sexual battery and that such an absence is not an indication that the sex was consensual. The Defendant argues that the witness never testified to such facts.

Second, the Defendant alleges that the State attorney bolstered the credibility of the victim during closing arguments by telling the jury that the victim was being "completely honest with you," and that the she lacked an interest in the outcome of the case, arguing that such statements are outside the law. Third, the Defendant claims that the State attorney shifted the burden of proof when he argued that no reason had been given for why the victim would lie under oath because such an argument implies that the Defendant had to prove that the witness had a motive to perjure herself. Fourth, the Defendant claims that when State attorney argued "for once during his testimony, he was being honest" that this statement was a personal commentary on the Defendant's credibility. The Defendant contends that had trial counsel made objection to any of these allegedly improper statements during closing argument and moved for a new trial, the Court would have granted the motion. He also argues that because counsel did not object, the case was not subjected to adversarial testing.

Wide latitude is afforded to counsel in closing arguments. Counsel's role in closing argument is to assist the jury in analyzing the evidence, and "[l]ogical inferences may be drawn, and counsel is allowed to advance all legitimate arguments." As the Third District Court of Appeal pointed out in *Anderson v. State*, "opinions by experienced trial lawyers differ widely as to whether it is wise to object and move for a mistrial in the midst of a prosecuting attorney's argument to the jury. Some advise against it, or suggest it be used sparingly, as they feel such objections tend to antagonize the judge or jury thus jeopardizing future court rulings or a favorable verdict." Furthermore, "[f]or improper argument to require a mistrial, the comments must deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than . . . it would have otherwise."

As to the prosecutor's comment that "for once during his testimony, he was being honest," this comment was not objectionable because the prosecutor was at that time reviewing the Defendant's testimony and pointing out what did and did not fit with the other evidence in the case. He did not improperly shift the burden in this case because the prosecutor was simply stating in his closing that either the Defendant was being truthful or that the jury should compare his statements to other evidence they had before them in this case. There also

was no improper shift in the burden when the prosecutor said that there was no reason put forward to show why the victim would have lied at trial because in that section of the closing, the prosecutor was discussing comparative credibility of the Defendant and the victim, and he was rebutting the defense closing in which set forth the victim's motives for fabrication in support of his discussion of how the physical evidence better fit the Defendant's version of events.

None of the remaining claims [of] ineffective assistance of counsel for failure to object to improper conduct on the part of the prosecutor is found to have prejudiced the Defendant at the trial. As to the claims of facts not in evidence, the prosecutor's statements regarding Dr. Federer were a reasonable inference of the trial testimony. Although the doctor did not testify as to whether the injuries were "unusual," she testified to her belief that non-consensual sex would not necessarily have to result in visible injuries. The statements that the Defendant punched the victim were also a reasonable inference from the fact that the Defendant admitted to hitting the victim and that he physically demonstrated how he hit her with a closed fist. As to the testimony of [the victim,] the prosecutor did misstate the evidence when he stated that the witness noted that the interior door in the residence was not damaged, but this statement was not so improper as to cause the trial to be unfair and require defense counsel to object because the detail was only minor as compared to the evidence overall. As to the statement about the Defendant taking the victim's purse, that statement was made in the context of a list of crimes that the Defendant is alleged to have committed while inside the residence, and this mistaken comment was not overly prejudicial because there was evidence of other crimes committed by the Defendant in the residence sufficient to support the charge of burglary, most notably the sexual battery.

Furthermore, any misstatements regarding evidence of semen on the victim's face did not prejudice the Defendant at trial. While the word semen was not directly connected to the DNA evidence from the victim's cheek by witness Mullins, there was evidence brought forth that the Defendant ejaculated on the victim's face and that testing of a sample taken from the victim's cheek was found to contain the DNA belonging to the Defendant. First, the victim testified that the Defendant had ejaculated on her face, and the Defendant himself testified that he did not deny that the victim had semen on her face and that that had happened through the course of oral sex. The ER nurse

- 43 -

also testified that the victim had told her that the Defendant had ejaculated on her face. Finally, the DNA analyst testified that the swab taken from the victim's cheek, and that it was a match to the Defendant's DNA.

The Court finds that the Defendant was not prejudiced by counsel's failure to object to these comments by the prosecutor and failure to move for a mistrial, because either the prosecutor was making a logical inference from the evidence or the misstatement was not significant enough to have a provided a basis for the Court to grant a mistrial.

The post-conviction court ruled both that counsel did not perform deficiently and that, even if counsel's performance was deficient, Combs proved no prejudice. An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). *Darden*, 477 U.S. at 181, explains further:

The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' *Donnelly v. DeChristoforo*, 416 U.S. 637, [643] . . . (1974). Moreover, the appropriate standard of review in a petition for the writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.' *Id.*, at 642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) *(en banc)* ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally

unfair."), *cert. denied*, 480 U.S. 911 (1987). A review of the prosecutor's entire closing remarks shows that the post-conviction court reasonably determined that counsel's failure to object was not prejudicial. As a consequence, Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

## Ground 5

Combs alleges that trial counsel rendered ineffective assistance during closing arguments by conceding to the elements of both charged crimes. The post-conviction court rejected this claim as follows (Respondent's Exhibit 18 at 32–34):

> [T]rial counsel admitted that the Defendant had sex with the victim, including that there was evidence of the acts, but he did not concede the elements of burglary with assault or battery or the elements of sexual battery. On the contrary, the statements in closing argument regarding forensic evidence (i.e., tests sent to FDLE which resulted in DNA matches to the Defendant) would have conceded nothing more than the consensual sex that the Defendant admitted to in his own sworn testimony at trial. In addition, . . . there was some DNA evidence presented during the trial which linked the Defendant to the victim.
>
> . . . .
>
> Because any misrepresentation regarding DNA or other forensic evidence was consistent with the defense theory that the Defendant was invited in to the victim's residence where only consensual sex occurred, and the Defendant's own testimony admitted to these same acts, the Defendant was not prejudiced by defense counsel's statements during closing that DNA connected the Defendant to the victim in these ways. The Court also finds that the mere fact that trial counsel put on a defense that the victim fabricated her allegations of burglary and sexual battery after a consensual sexual encounter does not demonstrate that trial counsel stipulated to the Defendant's guilt of the crimes charged.

The post-conviction court ruled that the specific closing remarks highlighted by Combs fail to prove that counsel conceded to elements of the crimes charged. To the contrary, the post-conviction court's determination is based on a reasonable reading of the closing argument when considering the comments in proper context. For example, Combs mischaracterizes counsel's statement about the victim having been beaten and strangled as an admission. The comment is actually counsel's discussion about the lack of injuries for someone who was supposedly beaten and strangled for three hours. (Respondent's Exhibit 4 at 477) Combs fails to show that the post-conviction court's ruling is an objectively unreasonable application of *Strickland*.

## VI. CONCLUSION

Combs fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Combs's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The

clerk must enter a judgment against Combs and close this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Combs is not entitled to a certificate of appealability  ("COA").  A prisoner

seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first

issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right."  To merit a COA,

Combs must show that reasonable jurists would find debatable both the merits of the

underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would

debate either the merits of the claims or the procedural issues, Combs is entitled to

neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is

**DENIED**.  Combs must obtain permission from the circuit court to appeal *in forma

pauperis*.

ORDERED in Tampa, Florida, on October 7, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE